*701
 
 OPINION
 

 Per Curiam:
 

 This is an appeal from a district court declaratory judgment regarding the validity of two initiative ordinances approved by the City of Mesquite voters. Mesquite Question 1 (MQ1) governs public land sales, requiring the City to conduct all public land sales by a public auction or a public sealed bid process. Mesquite Question 3 (MQ3) governs candidacy eligibility, requiring an elected official or public employee to file his resignation from office/employment before seeking election as mayor or city council member.
 

 The district court determined that MQ1 is invalid inasmuch as it conflicts with NRS 266.267(1), NRS 268.050, and NRS 277.050, but determined that the severability clause of MQ1 saved it from being wholly invalid. As to MQ3, the district court determined that it directly conflicts with and is totally repugnant to NRS 266.405(1) and, thus, is wholly invalid. We agree with the district court for the most part. We conclude that MQ1 is wholly, not partially, invalid because it is repugnant to NRS 266.267(1). Also, we conclude that MQ3 is wholly invalid because it is repugnant to NRS 266.405(1). Accordingly, we affirm the district court’s judgment in part and reverse in part.
 

 FACTS
 

 The City of Mesquite voters approved two initiative ordinances— MQ1 and MQ3 — at the November 5, 2002, general election.
 

 MQ1 states:
 

 
 *702
 
 An Ordinance amending the Mesquites [sic] Municipal Code; mandating that all public land sales by the City of Mesquite be conducted through a properly noticed public auction or open bid process.
 

 Section 1: Amendment of the Mesquite Municipal Code. The Mesquite Municipal Code is hereby amended to add a new section regarding the sale of public lands to read as follows: “All public land sales by the City of Mesquite must be conducted through a properly noticed public auction or open to the public sealed bid process. The City must set a minimum acceptable bid, in the notice for sale.”
 

 Section 2: Severability. If any section of this Ordinance or portion thereof is for any reason held invalid or unconstitutional by any court of competent jurisdiction, such holding shall not invalidate the remaining provisions of this Ordinance.
 

 Section 3: Effective Date. This Ordinance shall be effective immediately upon passage by a majority of the voters of the City of Mesquite.
 

 MQ3 states:
 
 [2]
 

 AN ORDINANCE, AMENDING MESQUITE MUNICIPAL CODE, 1-6-2 TO READ AS FOLLOWS:
 

 A. No person shall be eligible for the office of Council member or Mayor unless he is a qualified elector of Mesquite Nevada, at least eighteen (18) years of age, must not be a debtor to the City, and has been a resident of the City for at least one year immediately prior to the election in which he is a candidate. He shall hold no other elective public office, but he may hold a commission as a notary public or be a member of the armed forces reserve. [No employee of the City or officer thereof, excluding City Council members, receiving compensation under the provisions of this code or any City ordinance, shall be a candidate for or eligible for the office of Council member or Mayor without first resigning from employment or City office.]
 
 No officer whose term of office would continue through the upcoming election or employee of the city, receiving compensation under the provisions of this code or any City ordinance, shall be a candidate for or eligible for the office of Council member or Mayor, without first filing a “Declaration of Resignation” from office or employment with the Mesquite City Clerk, which shall become effective at the time of the swearing in of newly elected
 
 
 *703
 

 City Officers. This “Declaration of Resignation” must be filed at least 10 calendar days preceding the opening of filing for a Declaration of Candidacy for the office he seeks and shall be published as soon as possible within the afore mentioned 10 calendar days by the City Clerk. This publication shall include all local print media as well as postings at all regular legal notice posting sites.
 

 EFFECTIVE DATE: This Ordinance shall become effective immediately upon passage by a majority of the voters of the City of Mesquite Nevada.
 

 CONTINGENCIES: If a change in the district boundaries removes a council member from his district, his right to continue in office representing the district to which he was elected shall not be affected.
 

 SEVERABILITY: If any section of this Ordinance or portion thereof is for any reason held invalid by any court of competent jurisdiction, such holding shall not invalidate the remaining provisions of this Ordinance.
 

 Following the passage of MQ1 and MQ3, the City of Mesquite petitioned the district court for judicial confirmation or, in the alternative, for declaratory judgment regarding the legal validity of the initiative ordinances. The City argued that the initiative ordinances are legally invalid because they are repugnant to several NRS provisions. Specifically, the City argued that MQ1 is invalid because its requirement that all public land sales be conducted by the city council through public auction or sealed bid process deprives the city council of its statutory discretion to sell public property by other means and at a lower price. Additionally, the City argued that MQ3 is in direct conflict with NRS 266.405(1), which provides certain elected city officers with a four-year term.
 

 In response, City of Mesquite Mayor Charles Horne submitted an answer and opposition to the City’s petition. Horne argued that the Nevada Constitution reserves to the citizens of Mesquite the right to legislate by ballot initiative and that the citizens’ initiative powers are not limited by NRS 266.105(1), which states that all ordinance resolutions passed by the city council must not be repugnant to the United States or Nevada Constitutions or any provision of NRS Chapter 266. Alternatively, Horne argued that even if the citizens’ initiative powers were construed to be subject to NRS 266.105(1), the initiative ordinances at issue in this instance are not repugnant to any NRS provisions.
 

 After hearing argument on the petition, the district court concluded that MQ1 is invalid because it directly conflicts with NRS 266.267(1), NRS 268.050, and NRS 277.050 inasmuch as it lim
 
 *704
 
 its the city council’s discretion in conducting public land sales. However, the district court reasoned that because MQ1 has a sev-erability clause, it could be confirmed in part. Thus, the district court ruled that MQ1 could be implemented, provided that the word “all” is omitted and the statutory discretion given to the City pursuant to NRS 266.267, NRS 268.050, and NRS 277.050 is inserted before the words “public land sales.”
 

 The district court next determined that MQ3’s requirement that elected city officers who wish to run for mayor or city council member during their current term file a “Declaration of Resignation” ten days before the opening of filing for the office they seek is in direct conflict with and totally repugnant to NRS 266.405(1), which provides a four-year term for certain elected officers. The district court reasoned that MQ3 impermissibly shortens an elected officer’s term, and that an initiative ordinance cannot nullify a specific NRS provision in this manner.
 

 Thereafter, Horne filed a notice of appeal. On appeal, Home argues that the Mesquite voters have a fondamental right to enact legislation when public officials are not responsive to public concerns, as in this case. Also, Horne argues that the constitutional reservation to the people of the ballot-initiative power is not subject to the limitations of NRS Chapter 266. And, according to Horne, even if the citizens’ initiative powers are construed to be subject to the provisions of NRS Chapter 266, neither MQ1 nor MQ3 is repugnant to any NRS provisions.
 

 DISCUSSION
 

 Mesquite is a general law city established and operated under the provisions of NRS Chapter 266, and Mesquite has not adopted a charter form of government.
 
 [3]
 
 Consequently, Mesquite remains controlled by the provisions of NRS Chapter 266. Particularly relevant to this appeal is NRS 266.105, which states:
 

 1. The city council may make and pass all ordinances, resolutions and orders, not repugnant to the Constitutions of the United States or of the State of Nevada or to the provisions of this chapter, necessary for the municipal government and the management of the city affairs, for the execution of all powers vested in the city, and for making effective the provisions of this chapter.
 

 Home argues that only the city council, not the Mesquite voters, is subject to NRS 266.105(1). Horne insists that in
 
 Garvin v. District Court,
 
 this court clearly made a distinction between ordinances passed by the governing body and those passed by the voi-
 
 *705
 
 ers by stating that ‘ ‘the electorate is not bound by the statutory requirements that the local legislative bodies must follow.”
 
 [4]
 
 This statement, however, must be read in context.
 

 In
 
 Garvin,
 
 we were attempting to give the citizens’ initiative and referendum powers the authority they deserve by concluding that citizens could pass ordinances related to zoning issues.
 
 [5]
 
 Thus, we stated that “if a county board of commissioners or city council can enact zoning legislation, the county and city voters can do the same by initiative.”
 
 [6]
 
 We never declared that the citizens’ initiative power is limitless or that citizens are never bound by statutory requirements. Indeed, citizens of a locality have only those legislative powers that the local governing body possesses.
 
 [7]
 
 Hence, in this instance, Mesquite’s citizens, like the city council, can only pass ordinances that comply with NRS 266.105(1). Consequently, MQ1 and MQ3 are not permissible if repugnant to the United States or Nevada Constitutions or to any provision of NRS Chapter 266.
 
 [8]
 

 MQ1
 

 NRS 266.267 provides the requirements for the sale, lease, or exchange of real property owned by a city and states, in part:
 

 1. A city council shall not . . . enter into a contract for the sale or exchange of real property until after the property has been appraised by one disinterested appraiser employed by the city. Except as otherwise provided in this section and paragraph (a) of subsection 1 of NRS 268.050, a lease, sale or exchange must be made at or above the current appraised value of the real property as determined by the appraiser unless the city council, in a public hearing held before the adoption of the resolution to lease, sell or exchange the property, determines by affirmative vote of not fewer than two-thirds of the entire city council based upon specified findings of fact that a lesser value would be in the best interest of the public. . . .
 

 2. The city council may sell, lease or exchange real property for less than its appraised value to any person who main
 
 *706
 
 tains or intends to maintain a business within the boundaries of the city which is eligible pursuant to NRS 374.357 for an abatement from the sales and use taxes imposed pursuant to chapter 374 of NRS.
 
 [9]
 

 The power given to general law cities, pursuant to NRS 266.267(1), is vital to the economic success of cities like Mesquite given its remote, rural location. Because it can be difficult to persuade new businesses to open in the City, restricting the City’s ability to reduce the price of public land in appropriate instances would make it even more challenging for the City to compete for new business. Yet MQ1 essentially eliminates the portion of NRS 266.267(1) that allows the city council to lease, sell, or exchange land at a price lower than the appraised price if it is in the best interest of the public. By making the City conduct all land sales by public auction or bid process, the City cannot ensure that a particular entity is able to purchase a specific piece of property because the entity could just as easily be outbid by another for the land. Consequently, MQ1 would likely prevent the city council from ever exercising its discretion to sell land at less than its appraised value, even when in the City’s best interest.
 
 [10]
 
 As a result, MQ1 is repugnant to NRS 266.267(1) and, thus, invalid.
 

 Although the district court resolved that MQ1 could be enforced if the word “all” is omitted and replaced with language concerning the statutory discretion given to the City pursuant to NRS 266.267(1), NRS 268.050, and NRS 277.050, we do not consider this construction to be practicable. Accordingly, we reverse the district court’s judgment inasmuch as it confirmed MQ1 in part.
 

 MQ3
 

 NRS 266.405(1) provides that elected city officers “shall hold their respective offices for 4 years and until their successors are elected and qualified.”
 
 [11]
 

 
 *707
 
 MQ3 is in direct conflict with NRS 266.405(1) in that it potentially shortens an elected officer’s term if he or she decides to run for city council member or mayor mid-term. MQ3 requires an elected officer who wishes to run for city council member or mayor mid-term to file a “Declaration of Resignation” at least ten days prior to the opening of the filing period for city elective offices. The resignation is effective upon the swearing in of the newly elected officers, regardless of whether the officer who filed the “Declaration of Resignation” wins the election. Thus, MQ3 effectively requires these officers to relinquish their positions prior to the conclusion of their statutorily mandated term of office. Consequently, MQ3 is repugnant to NRS 266.405(1).
 

 Since we hold that the two initiative ordinances, MQ1 and MQ3, are in conflict with Nevada law, we need not address the claim that both ordinances violate the Nevada and United States Constitutions.
 
 [12]
 

 CONCLUSION
 

 MQ1 and MQ3 are impermissibly repugnant to provisions of NRS Chapter 266 and, thus, unenforceable. Accordingly, we affirm the portion of the district court’s judgment concluding that MQ1 and MQ3 are invalid, but we reverse that part of the district court’s judgment determining MQ1 to be saved by its severability clause.
 

 [2]
 

 The initiative petition repeals the bracketed language and adds the language that is emphasized.
 

 [3]
 

 See NRS ch. 266 reviser’s notes.
 

 [4]
 

 118 Nev. 749, 764, 59 P.3d 1180, 1190 (2002).
 

 [5]
 

 Id.
 
 at 763, 59 P.3d at 1189.
 

 [6]
 

 Id.
 
 at 764, 59 P.3d at 1190.
 

 [7]
 

 See
 
 NRS 295.220(1) (“If a majority of the registered voters voting on a proposed initiative ordinance vote in its favor, it shall be considered adopted upon certification of the election results and shall be treated in all respects in the same manner as ordinances of the same kind adopted by the council.”).
 

 [8]
 

 NRS 266.105(1).
 

 [9]
 

 NRS 266.267(1) references NRS 268.050(l)(a), which provides that the governing body of any incorporated city may reconvey the right, title, and interest of the city in and to any land donated, dedicated, or purchased under the threat of an eminent domain proceeding for a number of specific public purposes, or land held in trust for the public for any public use, to the person by whom the land was donated or dedicated or to his heirs, assigns, or successors.
 

 [10]
 

 For example, a not-for-profit enterprise such as a hospital might never be able to locate in a rural community via an inexpensive purchase of public property because a for-profit entity could preempt acquisition through the MQ1 bidding process.
 

 [11]
 

 NRS 266.405(1) requires that a general law city have, in addition to the mayor and city council, a city clerk, city treasurer, a municipal judge, and a city attorney. The statute states that “[t]he offices of city clerk, city treasurer,
 
 *707
 
 municipal judge and city attorney may be either elective or appointive offices, as provided by city ordinance.”
 

 [12]
 

 See, e.g., Brewery Arts Ctr. v. State Bd. Examiners,
 
 108 Nev. 1050, 1055, 843 P.2d 369, 373 (1992) (noting that this court will not rule on a constitutional issue unless the ruling is necessary to the disposition of the case).